**Adam Q. Gould OSB #02315**
Adamq@epquerto.org
Gould Law Firm, P.C.
243 W. Commercial Ave.
PO Box 29
Coos Bay, OR 97420
541-269-5566
Fax: 541-269-0670
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **ADAM COLBY**, <br> Plaintiff, | Case No. 6:11-CV-6241-HO |
| v. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **COOS COUNTY,** an Oregon Political Subdivision**,** and **ROBERT MAIN,** individually and in his official capacity as Coos County Commissioner**,** <br> Defendants. | |

Plaintiff Adam Colby opposes defendants Coos County and Robert Main's motion for summary judgment.

## I. INTRODUCTION

Plaintiff filed a complaint against defendants for claims under 42 U.S.C. 1983 for (1) retaliation for plaintiff's exercise of his First Amendment rights and (2) deprivation of plaintiff's liberty interest in performing his duties as Coos County Assessor as guaranteed by Oregon statute

without due process of the law.  These claims arose out of actions taken by defendants while plaintiff served in the Coos County Assessors office: first as a deputy to defendant Bob Main, a former Coos County Assessor, and then while he served as Coos County Assessor.  Defendants retaliated against plaintiff for his attempts to reform the Assessor's office and inform the public about inappropriate use of the county computer system by Assessor's office employees.  In particular, defendants (1) interfered with plaintiff's role as Assessor by taking over his statutory right to hire, fire, and supervise the employees in his office, (2) misrepresented the nature of an investigation into his performance as Assessor, (3) released to the public a letter about the investigation which contained many false and defamatory statements about plaintiff, and (4) carried out these actions without any due process or opportunity for plaintiff to respond to allegations or exercise his rights as Assessor.

In their memorandum in support of their motion for summary judgment, defendants initially attempt to misrepresent the nature of plaintiff's claims by incorrectly asserting that plaintiff's complaint alleges that defendants caused his recall from office or removed him from office and that plaintiff's complaint claims he has a constitutional right to elected office.  Neither of these characterizations of plaintiff's complaint are accurate.

Instead, plaintiff's complaint seeks remedy for (1) defendants' adverse treatment of plaintiff in clear retaliation to plaintiff's exercise of free speech under the First Amendment and (2) defendants' depravation of plaintiff's substantive due process by interfering with his liberty interest of performing his duties as Coos County Assessor as set forth in Oregon statute. Summary judgment on these claims is inappropriate because, as this memorandum will show, plaintiff has laid out prima facie claims for both causes of actions.

Further, summary judgment on plaintiff's claims against individual defendant Main is not proper as defendant Main does not enjoy absolute or qualified immunity from plaintiff's constitutional claims in this case.

## II.  STATEMENT OF FACTS

Plaintiff was an employee of the Coos County Assessor's office from 2006-2009, while defendant Main was serving as the Assessor. (Adam Colby Decl., para 2)  On May 20, 2008, plaintiff was elected to the position of Coos County Assessor and Defendant Main was elected to the Coos County Board of Commissioners. (Colby Decl., para 3)  While he was Assessor-elect, plaintiff was serving as deputy to defendant Main and during this time, plaintiff made known to the employees in the Assessor's office that he planned to implement a number of reforms to improve the efficiency and work ethic within the office. (Colby Decl., para 4)  Also during this time, a number of employee related complaints arose in the Assessor's office. (Colby Decl., para 5)  Because plaintiff was concerned at the level of inter-office discord, plaintiff requested that the Commissioners conduct an investigation into all the complaints. (Colby Decl., para 6).  Plaintiff was subsequently placed on administrative leave for an unknown reason, and he later learned the defendant Main was attempting to have him fired. (Colby Decl., para 6)

When plaintiff stepped into his role as Assessor on January 5, 2009, he began to implement his ideas for reform and asked his assistant, Christina Crabill (aka Karsen), to monitor employee emails sent from county email accounts. (Colby Decl., para 7)  As a result of this monitoring, plaintiff discovered that between 2006 and 2008, thousands of racist, sexist and otherwise inappropriate emails were sent among Assessor's office employees and employees of other county departments. (Colby Decl., para 8).  He immediately reported these findings to the

then-county Human Resources Director Steve Allen and Coos County Counsel Jacki Haggerty and was later told that the Coos County Board of Commissioners hired a Portland firm to investigate the computer issue. (Colby Decl., para 10)

In March of 2010, plaintiff terminated the employment of his office manager, Ms. Karsen. (Colby Decl., para 11). He was later told by Mr. Allen that he should not have fired her. (Colby Decl., para 12). Plaintiff received no response to his arguments for why he believed the firing to be legal termination of a probationary employee. (Colby Decl., para. 12) Instead, without any prior discussion with plaintiff, the County hired Jill Goldsmith to conduct interviews as part of an investigation. (Colby Decl., para 13) Plaintiff was told that the investigation was only of the Karsen termination and that it was confidential (Colby Decl. para 14-16). He agreed to meet with Ms. Goldsmith to answer her questions, which were almost exclusively related to the Karsen termination. (Colby Decl., para 14-16)

After not hearing any news about the investigation of the Ms. Crabill termination or the investigation of the computer issue, plaintiff sent the County Commissioner a letter on May 5, 2010 requesting a meeting to discuss both issues and the status of the office in general. (Colby Decl., para 17) Plaintiff received no response, and because plaintiff felt strongly that something needed to be done about the misuse of county computers by county employees and because the County Commissioners were not following through on the issue, plaintiff released a number of the inappropriate emails to the public during a press conference on June 11, 2010. (Colby Decl., para 18,19).

On June 29, 2010, plaintiff received a letter from the Commissioners in response to findings of the Goldsmith report, which the letter described as an investigation into the office of

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 4

Coos County Assessor, not merely into the Karsen termination. (Colby Decl., para 20)   The letter contained many false and defamatory statements about plaintiff that plaintiff had never been asked about my Ms. Goldsmith, including that plaintiff had cost the County $200,000 while serving as Assessor. (Colby Decl., para 21, 22)  The letter also told plaintiff that he was not to be involved in hiring, firing, or otherwise dealing with employment issues in his office and threatened that the Commissioners would take measures against him if he did not meet their demands. (Colby Decl., para 23)  The letter stated that this letter would be released to the public on July 7, 2010 at 5pm, which was the date of a regular Board of Commissioners meeting. (Colby Decl., para 24)

Plaintiff attended that Commissioners meeting and found that copies of the letter had been distributed to the public at the meeting prior to 5pm. (Colby Decl., para 26)  Plaintiff was not given an opportunity during that meeting to confront witnesses or offer evidence on his behalf, and he was told by Commissioners that County HR Director would address employee concerns in the Assessor's office from then on. (Colby Decl., para 27)

Ten days after the release of the letter, a petition for plaintiff's recall was filed and supporters of the recall, including defendant Main, began an aggressive campaign against plaintiff which included quoting and further publishing the Commissioners' letter. (Colby Decl., para 28, 31).   After the release of the letter, plaintiff had an increasingly difficult time managing his office because of employee insubordination and the filing of several "stress" claims by employees. (Colby Decl., para 29, 30) When plaintiff attempted to respond to allegations against him, made either in the recall campaign or in the stress claims, Ms. Haggerty informed him that he could not do so. (Colby Decl., para 29, 30)

On November 23, 2010, the Commissioners released a redacted version of the Goldsmith

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 5

report and press release containing false statements about the report, including false statements for why the investigation began, false statements about why plaintiff was placed on administrative leave prior to taking office, and false statements about how much money plaintiff had cost the county during his time in office.  (Colby Decl., para 32-34).  The press release and redacted version of the report also left out all findings that supported plaintiff's position, including positive statements from employees about plaintiff or the frivolous nature of some of the employees' stress claims. (Colby Decl., para 35-37).  Plaintiff was recalled from office in December of 2010. (Colby Decl., para 38)

### III.  LEGAL ARGUMENT

The standard for summary judgment is not met by defendants in this case.  Summary judgment should be granted only when the pleadings, discovery, and affidavits show that there is no issue of genuine material fact and the movant is entitled to summary judgment as a matter of law. Fed.R.Civ.P 56(c).  The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a significant showing of an essential element of a claim in their case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists when there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

> **A.    Defendants' Initial Arguments for Summary Judgment are Irrelevant Because Plaintiff's Claims are Based on Defendants' State Actions, Not Plaintiff's Recall from Office By Coos County Voters.**

Defendants' memorandum of law begins with two red herring arguments: that plaintiff has no claims based on 42 USC 1983 because Coos County voters, not defendants, recalled him from

office and because plaintiff has no constitutional right to elected office.  Plaintiff urges Your

Honor to not be misled by these arguments as they are irrelevant to plaintiff's claims, except with

respect to damages, and certainly no basis for summary judgment in this case.  By leading with

these arguments, defendants are attempting to misrepresent plaintiff's complaint by suggesting

that plaintiff's claims are that defendants caused his recall from office or removed him office.  If

those were plaintiff's claims, which they are not, then defendants' detailed and heavily cited

arguments about how a plaintiff cannot bring 42 USC 1983 claim for loss of elected office may

have relevance.  But, plaintiff's claims are not based on the fact that he was recalled from elected

office.

    Plaintiff's 42 U.S.C 1983 claims are based on defendants' state actions in retaliation of

plaintiff and in interfering with his statutory rights as Assessor, which stand alone as actionable

violations of plaintiff's First and Fourteenth Amendment rights.   Plaintiff's claims are also based

on his substantive due process rights based on his liberty interest of performing his duties as

County Assessor, not a right to hold elected office.  Plaintiff's injuries from defendants' actions

occurred far before his recall from office.  Plaintiff's  recall from office by the voters of Coos

County is pled in the complaint as a component of damages, not as a cause of action.

    Perhaps defendants lead with these misplaced arguments because, as plaintiff establishes

below, defendants' arguments for summary judgment on plaintiff's *actual* claims are unsupported

by ninth circuit precedent.

     **B.**     **Plaintiff's Complaint Sets Forth a Prima Facie First Amendment Retaliation
Claim Against Defendants Because Plaintiff Suffered Adverse Action By
Defendants for Protected Speech and Plaintiff's Speech was a Substantial
Motivating Factor for that Adverse Action.**

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 7

Summary judgment is inappropriate on plaintiff's first claim for retaliation against plaintiff for exercising his First Amendment rights.  Defendants retaliated against plaintiff for releasing to the public a number of highly inappropriate emails written by county employees while at work.  (Colby Decl., ex 1).  Plaintiff released these emails to raise public awareness to considerable deficiencies in the operation of the Assessor's office and the need for reform.  Defendants' specific retaliatory acts were as follows: (a) changing the purported purpose of the Goldsmith Report from an investigation into one firing into a broader investigation into how he conducted his office, (b) failing to tell plaintiff that the scope of the Goldsmith report was being expanded to cover a broader investigation into how he conducted his office, (c) releasing a defamatory letter and summary of the Goldsmith report to the public, (d) failing to provide Ms. Goldsmith with information that impeached the credibility of witness interviewed by Ms. Goldsmith.

Plaintiff's complaint lays out a clear prima facie case for First Amendment retaliation based on the ninth circuit's established standard for public employees and officials.  Speech for public employees and officials is less protected from retaliatory government action than that of private citizens, however public employees and officials do not lose their rights to speak freely on matters of public concern.  *Connick v. Myers*, 461 U.S. 138, 144-5 (1983), *see also Waters v. Churchill*, 511 U.S. 661, 671 and 674 (1994) (recognizing that "government employees are often in the best position to know what ails the agencies for which they work").  To establish a retaliation claim, a plaintiff, who is a public employee or official, has the burden of showing (1) he was subjected to an adverse employment action, "such as being denied a benefit or privilege," (2) he engaged in speech that was a matter of public concern, and (3) the speech was a substantial

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 8

motivating factor for the adverse action. *Ulrich v. City and County of San Francisco, et al*, 308 F.3d 968, 976 (9th Cir. 2002); *see also Thomas v. City of Beaverton,* 379 F.3d 802, 808 (9th Cir. 2004), *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000).

As a threshold matter, this test for First Amendment retaliation claims brought by public employees and officials applies in this case because the facts constituting plaintiff's claims occurred when he was a public employee and his relationship with the Coos County Board of Commissioners was analogous to that of an employee and employer. The ninth circuit recently held that "in evaluating whether a plaintiff should be considered a public employee for purposes of a claim alleging First Amendment retaliation against the government, the court considers whether the relationship between the parties is analogous to that between an employer and employee and whether the rationale for balancing the government's interests in efficient performance of public services against public employees' speech rights applies." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1101 (9th Cir. 2011). Clearly the plaintiff was a public employee in his role as a County Assessor, but defendants will likely argue that he is not a pubic employee for purposes of a First Amendment claim because he was elected to his position. The ninth circuit does not state in any case that a plaintiff cannot be considered a public employee if he was elected to that position. Instead, the ninth circuit offers the test in *Clairmont*, which allows the court to take some liberties with the term public employee. So, although the court need not go through the steps of the *Clairmont* test because plaintiff was technically a public employee, the test further bolsters the argument that plaintiff should be treated as a public employee in his retaliation claim.

Here, the Board of Commissioners acted as plaintiff's employer because they placed

restrictions and made specific demands related to the performed his duties and how he managed

his office, and threatened him with punishment if he did not obey their demands.  In essence they

threatened to punish him for insubordination.  They restricted access to the Goldsmith report,

access in which they enjoyed.  Finally, they even placed limits on his ability to voice displeasure

with how some of his employees were treating him as it related to the very public issue of the

recall.

Having established that this standard applies, plaintiff clearly meets the three elements

required for a prima facie retaliation case.  First, plaintiff experienced adverse employment action.

Adverse employment action does not have to be removal from employee's position, but can be the

loss of a "benefit or privilege" associated with the position.  *Ulrich*, 308 F.3d at 977.  The plaintiff

does not even have to have a legal right to that benefit or privilege and the "denial of even a

'trivial' benefit may form the basis for a First Amendment claim where the aim is to punish

protected speech." *Id.*  Here, plaintiff experienced adverse employment action when defendants

placed significant restrictions on his ability to independently run his office.   Plaintiff clearly

establishes that he experienced adverse employment action totally independent of his eventual

removal from office by Coos County voters.

Next, defendants retaliated against plaintiff for protected speech because the speech was

clearly a matter of public concern.   Speech by a public employee is a matter of public concern if

the speech is relevant to the public's evaluation of the performance of government agencies.  *Pool

v. VanRheen*, 297 F.3d 899, 906 (9th Cir. 2002) and *McKinley v. City of Eloy*, 705 F.2d 1110,

1114 (9th Cir. 1983).  Here, the purpose of plaintiff's speech, release of the inappropriate emails,

was to show the public that the County Assessor's office was not functioning properly and likely

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 10

not meeting the standards of taxpayer's expectations.  It would be difficult to describe plaintiff's expression here as anything other than a matter of public concern since, by revealing this information to the public, he acted against his own personal employment interest for the sake of government transparency.

Defendants argue that plaintiff's speech was not protected because he was an elected official.  Citing no case law from the ninth circuit, and case law that involves considerably distinguishable facts from those of the present case, defendants argue that an elected official's speech cannot be protected because "[t]he First Amendment does not protect elected officials from criticism or attacks on how they are performing their duties . . ." and that "there is no claim for a First Amendment violation by an elected official if the public entity took no action that actually restricted the official's opportunity to speak. . . " *Defendants' Memorandum in Support of Motion for Summary Judgment*, pages 6 and 7.  Defendants claim that these generalizations come from *Phelan v. Laramie County Community College Bd.*, 235 F.3d 1243 (10th Cir. 2000) (incorrectly cited by defendants as 1235 F.3d 1243).   In *Phelan*, a school board member brought a First Amendment retaliation suit against other school board members for censuring her for allegedly violating the board's ethics policy.  *Id.* at 1245.  The tenth circuit court held that she was not in fact censured or prevented from commenting on the board's actions and therefore did not have a retaliation claim.  *Id.* at 1247.  In that case, the particular retaliation claim was for censure and the court held the plaintiff did not meet the elements for such a claim because she was not in fact restricted from speaking.  The court did not make a generalized holding that an elected official can only bring a First Amendment retaliation claim if he or she is restricted from speaking.  Further, the court in that tenth circuit case applied a different standard than what should

be applied in this case because, as the court noted, the plaintiff was "not a governmental employee." *Id.* Defendants not only misrepresent the holding in this case, but their reliance on this case in their argument for summary judgment on plaintiff's claim for retaliation is completely misplaced because it involves totally different facts and, to further weaken defendants' argument, it is a tenth circuit case.

Additionally, there are facts in the present case that show that defendants actually did take actions to restrict Plaintiff's speech. The Commissioners' June 29, 2010 letter placed restrictions on ways in which plaintiff could communicate with his employees. Plaintiff's ability to speak out against his detractors referenced in the letter and the Goldsmith report was also restricted. The report was not initially released with the letter, and the letter did not contain the names of individuals who allegedly made statements against plaintiff. When the report was released several months later, names of those who allegedly spoke out against plaintiff were redacted. By withholding the Goldsmith Report, and then by redacting it, defendants restricted plaintiff's ability to speak out against the findings of the report, its credibility, and the defendants' characterization of it. Furthermore, in a circumstance when plaintiff knew the identity of one of his biggest detractors, an employee, and wanted to publicly speak out against that employee in the context of his recall campaign, County Counsel told him he was not allowed to do so.

Returning to the ninth circuit and to the three elements of plaintiff's prima facie claim for retaliation, plaintiff can easily show that plaintiff's speech was a substantial motivating factor, if not the only factor, for defendants' adverse action against him. Proof of motive in a First Amendment retaliation suit "may be met by either direct or circumstantial evidence, . . . and involves questions of fact that normally should be left for trial." *Ulrich*, 308 F.3d at 979, (citing

*Allen v. Iranon*, 283 F.3d 1070, 1074 (9th Cir. 2002)).   Here, plaintiff can present a number of facts that serve as direct and circumstantial evidence of defendants' motivation for their adverse employment action, most notably the timing of the defendant's actions in response to plaintiff's protected speech.  Plaintiff was initially notified of  a non-public investigation into his termination of Ms. Karsen, which he willingly participated in.  After meeting with Ms. Goldsmith he reached out to the Commissioners in hopes of setting up a meeting to discuss issues surrounding his office, including the email situation that he alerted them the previous November.

Since plaintiff first alerted the County to the presence of the emails, the county had done very little, if anything to address the issue with the employees as of June of 2010.  It can be therefore be inferred that the defendants simply did not want to.  Since the emails in particular cast Defendant Main's tenure as Assessor in a very negative light, it can be inferred that Defendant Main was especially interested in making sure the email controversy did not see the light of day.

According the Goldsmith report, it was completed on June 4, 2010.  On page three of the report Ms. Goldsmith describes the report's scope as follows:

> "The scope of the investigation is to determine whether the reasons proffered by the Assessor for terminating Karsen are supported by the evidence, and if not, to provide an assessment of the likely basis for his decision to terminate Karsen." (Gould Decl. Ex. 3).

So as of June 4, 2010 Ms. Goldsmith had not "expanded her investigation to include the entire Assessor's office, not just the Karsen termination" as the County represented in its November 23, 2010 press release with the release of the redacted Goldsmith Report.  Defendants included a similar misrepresentation about the scope of the Goldsmith Report in the first paragraph in their June 29, 2010 letter.  It can therefore be reasonably be inferred that the between

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 13

June 4, 2010 and June 29, 2010, defendants changed the scope and purpose, or stated scope and purpose, of the Goldsmith investigation. Plaintiff released the emails to the public on June 11, 2010.

A week after plaintiff released the emails, and a week before the defendants sent their June 26, 2010 letter to plaintiff, Coos County HR director made statements to a local newspaper that suggests that plaintiff's release of the emails did anger defendants and cause them to change their approach towards the Goldsmith investigation, plaintiff and his office.   Speaking to the Coos Bay *World* newspaper, Mr. Lehman accused plaintiff and his attorneys of creating "a three ring circus."  He stated that he "had hoped to get all the parties to the table to see if we could work through this professionally and calmly."  (Gould Decl. Ex. 5)

All of this is evidence that plaintiff's speech was a substantial motivating factor for defendants' actions.

As the above arguments show, Plaintiff has established a prima facie case for First Amendment retaliation.  Summary judgment on this claim is inappropriate.

> **C.     Plaintiff Establishes a Prima Facie Case For Violation of His Fourteenth Amendment Due Process Rights Because Plaintiff was Deprived His Liberty Interest of Performing the Duties of County Assessor By Defendants and Suffered Injury as a Result of that Deprivation**

Plaintiff sets forth a prima facie case for violation of his Fourteenth Amendment Due Process Rights based on deprivation of a liberty interest.  Courts allow Fourteenth Amendment Due Process claims when a plaintiff can show that the government deprived him the freedom "to engage in any of the common occupations of life" without due process of the law.  *Bd. Of Regents v. Roth*, 408 U.S. 564, 572-73 (1972).  While injury to reputation alone cannot establish a

deprivation of liberty interest claim, a claim can be made when the government makes a stigmatizing statement of questionable accuracy about the plaintiff and that statement is coupled with the denial of some other tangible interest such as the deprivation of a right or status recognized by state law. *Paul v. Davis*, 424 U.S. 693, 709 (1976). This is known as the "stigma-plus" test, and when applied to the facts of this case it provides an airtight Fourteenth Amendment due process claim for plaintiff.

Defendants in this case made many stigmatizing statements of questionable accuracy about plaintiff. The June 29 letter described plaintiff as "dictorial," "demeaning and disrespectful," "irrational," "a bully," and "intimidating." It refers to plaintiff as a legal liability for the county, and his actions as a matter of "grave public concern."

In addition to these defamatory statements, defendants denied plaintiff a tangible interest recognized by state law - his rights to run the County Assessor's office as guaranteed by Oregon Statute. ORS 204.601(2) provides that employees of the County Assessor's office "shall hold office during the pleasure of the appointing officer."

Defendants deprived plaintiff of his statutory right to run his Assessor's office and manage his staff. In particular, after plaintiff exercised his statutory right and fired his office manager, defendants interfered and began the investigation, and then expanded the investigation, which became the basis for the letter released to the public. Defendants also interfered by ordering plaintiff not to communicate with certain members of his staff who were bringing stress claims against the county. Defendants restricted him from even disciplining any employee, for any reason whatsoever.

The Oregon Supreme Court interpreted ORS 204.601(2) and how it applies when a county

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 15

board of commissioners attempts to interfere when a county agency officer fires a deputy in *Graves v. Arnado*, 305 Or. 358 (1989). In that case, the Oregon Supreme Court held that a county may only "impose conditions of due process" upon the hiring and firing of deputies by the chief officer (in that case, a sheriff). *Id.* at 362. In this case, the Coos County Board of Commissioners went much further than imposing conditions of due process on plaintiff. Instead, defendants simply took unilateral action to restrict the management of his office in matters that went beyond simply hiring and firing decisions.

Defendants argue that plaintiff's due process claim is "nothing more than a defamation claim, couched as a constitutional claim." *Defendants' Memorandum in Support of Motion for Summary Judgment*, page 9. Again, Defendants attempt to misguide the court by suggesting that plaintiff's due process claim is based on plaintiff's claim to a property interest in elected office. That is not the basis for plaintiff's due process claim; the basis is deprivation of a *liberty* interest, which the ninth circuit has defined as "a right or status based recognized by state law." *Ulrich*, 308 F.3d at 982. Defendants' characterization of plaintiff's claim ignores the fact that, as the elected County Assessor, plaintiff had a statutory right to run and manage his office without interference from the Board of Commissioners. Defendants did not merely make defamatory statements, they deprived plaintiff of a liberty interest, and in doing so violated his Fourteenth Amendment due process rights.

### D. Plaintiff's Claims Against Individual Defendant Bob Main Are Well-Pled Because Defendant Main Does Not Enjoy Absolute or Qualified Immunity in this Case

Defendant's final attempt for a summary judgment ruling in this case is for individual defendant Bob Main. First defendants claim that defendant Main is entitled to summary judgment

in this case because plaintiff has no actionable claim.  Plaintiff has established that he has

actionable claims for First Amendment retaliation and Fourteenth Amendment due process

violation, so the defendants, including defendant Main, are not entitled to summary judgment.

Defendants further argue that defendant Main is subject to "absolute" immunity.  To

support this argument, defendants cite several non-analogous cases where the Supreme Court held

that certain citizens could not be sued for mere political speech and activities.  Defendant Main

was not involved in mere political speech or activities.  His speech and actions constituted

violations of plaintiff's constitutional rights.  In the cases cited by defendants in their "absolute"

immunity theory, none of the citizen defendants were found to have violated anyone's

constitutional rights.

Finally, defendants seek summary judgment on plaintiff's claims against defendant Main

under a theory that defendant Main, as a government official, enjoys qualified immunity in this

case.  This is also incorrect.  Defendants are correct that to determine whether a government

official is entitled to qualified immunity the test that applies is the two part inquiry set forth in

*Saucier v. Katz,* 533 U.S. 194, 200-201 (2001), but they conveniently leave out important details

of the test that do not work in their favor.  The actual, unedited test as to whether a government

official should not be entitled to immunity is (1) whether the facts alleged, *taken in the light most*

*favorable to the party asserting the injury*, show that the official's conduct violated a

constitutional right, and (2) whether that right was clearly established *in light of the specific*

*context of the case*.  *Id.* at 201 (emphasis added).

Applying this test, defendant Main is not entitled to qualified immunity in this case.  The

facts, taken in the light most favorable to plaintiff show that defendant Main violated plaintiff's

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- 17

constitutional rights.  In particular defendant Main deprived plaintiff his right to manage, hire and

fire his staff in the assessor's office, which plaintiff established was his liberty interest as

established by Oregon statute.  Second, that right was clearly established in the light of the

specific context of this case.  Defendant Main had served as County Assessor, so he knew what

the rights of that office entailed.

Finally, it is important to note that if plaintiff's claims were state law defamation claims,

defendant Main would likely be entitled to some form of immunity.  However, plaintiff is

bringing federal constitutional claims and the standards for immunity of government officials is

different.  Defendant Main does not meet that standard in this case, and therefore summary

judgment on the claims against him should not be granted.

## CONCLUSION

Defendants are not entitled to summary judgment on any of plaintiff's claims.  Plaintiff

has established prima facie claims for retaliation in violation of plaintiff's First Amendment rights

and deprivation of plaintiff's liberty interest without due process in violation of plaintiff's

Fourteenth Amendment rights.  Further, defendant Main is not entitled to immunity in this case.


Dated this 17th day of November, 2011

ADAM Q. GOULD
Adam Q. Gould, OSB #02315
Attorney for Plaintiff

CERTIFICATE OF SERVICE


I, Adam Q. Gould, attorney for Plaintiff  hereby certify that I did on November 17, 2011 I served the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** to:


Karen O'Kasey
Hoffman, Hart & Wagner LLP
1000 S.W. Broadway, Twentieth Floor
Portland, OR 97205
Of Attorneys for Defendant


by electronic means through the Court's Case Management/Electronic Case File system.



/s/Adam Q. Gould
Adam Q. Gould


CERTIFICATE OF SERVICE