IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

ADAM COLBY,                                      )
                                                 )      Case No. 11-6241-HO
                          Plaintiff,             )
                                                 )           ORDER
            vs.                                  )
                                                 )
COOS COUNTY, an Oregon Political                 )
Subdivision, and ROBERT MAIN,                    )
individually and in his official                 )
capacity as Coos County Commissioner,            )
                                                 )
                          Defendants.            )
_____)

        Plaintiff, former Assessor of Coos County, Oregon, brings this

action against Coos County and Coos County Commissioner Robert

Main, alleging violation of his free speech and due process rights.

The case arises out of tension between plaintiff and the County and

the eventual end of plaintiff's term as County Assessor following

a recall campaign.

        Although the complaint seeks damages for lost wages and fringe

ORDER - page 1

benefits in addition to non-economic damages, plaintiff states that he is not asserting that defendants caused his recall from office. Plaintiff also asserts he is not claiming he has a constitutional right to elected office.  Rather, plaintiff asserts that

> he seeks remedy for (1) defendants' adverse treatment of plaintiff in clear retaliation to plaintiff's exercise of free speech under the First Amendment and (2) defendants' [deprivation] of plaintiff's substantive due process by interfering with his liberty interest of performing his duties as Coos County Assessor as set forth in Oregon statute.

Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (#13) at p. 2.  Plaintiff contends that defendants (1) interfered with plaintiff's role as Assessor by taking over his statutory right to hire, fire, and supervise the employees in his office, (2) misrepresented the nature of an investigation into his performance as Assessor, (3) released to the public a letter about the investigation which contained many false and defamatory statements about plaintiff, and (4) carried out these actions without any due process or opportunity for plaintiff to respond to allegations or exercise his rights as Assessor.

On May 20, 2008, Coos County voters elected plaintiff to the position of County Assessor.  Also on May 20, the voters elected defendant Main to the position of Coos County Commissioner.  Prior to plaintiff taking office, defendant Main still served as Assessor and plaintiff served as an appraiser and then chief deputy assessor.

ORDER - page 2

Plaintiff asserts that while Assessor-elect, he made it known that he planned to implement reforms to improve the efficiency and work ethic within the office. Plaintiff also requested that the Commissioners conduct an investigation into complaints by employees arising in the Assessor's office. Plaintiff asserts that the Board placed him on administrative leave, on about September 29, 2008, for unknown reasons and that defendant Main attempted to have him fired.

Plaintiff took over as Assessor on January 5, 2009. Plaintiff alleges he began to implement his ideas for reform immediately, and asked his assistant Christina Crabill (AKA Christina Karsen) to monitor employee e-mails. Plaintiff asserts that as a result of the monitoring, he discovered that between 2006 and 2008, employees sent thousands of racist, sexist and otherwise inappropriate emails from Assessor's office accounts. Plaintiff alleges that he reported these findings to the County Human Resources Director and to Coos County Counsel. Plaintiff also alleges that the Commissioners informed him that the Board hired a law firm to investigate the issue.

In March of 2010, plaintiff terminated Karsen and alleges that the Human Resources director informed him that he should not have terminated her. Plaintiff asserts that the County hired Jill Goldsmith to conduct an investigation and told him that the investigation only related to the Karsen termination.

ORDER - page 3

Plaintiff asserts the Commissioners failed to respond to his May 5, 2010 request to discuss the e-mail issues and the Karsen termination.   Plaintiff then released a number of the e-mails to the public during a press conference on June 11, 2010.

On June 29, 2010, the Commissioners sent a letter to plaintiff describing the Goldsmith investigation which included not only issues relating to the Karsen termination, but also issues regarding the Assessors office in general.   The letter detailed expenses incurred by the County responding to employee legal claims since plaintiff took office, and concern over plaintiff's management style presenting legal liability for the County.   The Board also informed plaintiff that he would be required to obtain approval from the Human Resources Director prior to hiring, firing, promoting, disciplining, or taking any employment related action against any employee in the Assessor's office.

Plaintiff asserts that despite an assurance that the letter would not be made public prior to 5:00 pm on July 7, 2010, in order to allow him to meet with the Board concerning the Board's expectations, the Board released the letter publically prior to 5:00 pm on that date.   Plaintiff asserts that during a July 7, 2010 Board meeting, the Board did not give him an opportunity to confront witnesses or offer evidence regarding the issues in the letter.   Plaintiff further asserts that at the meeting, the Commissioners told him that the Human Resources Director would now

ORDER - page 4

address employee concerns in the Assessor's office.

Ten days after the letter's release, recall supporters filed a petition for plaintiff's recall.  Plaintiff alleges that recall supporters, including defendant Main, began an aggressive campaign against plaintiff which included further publishing of the letter's contents.

Plaintiff alleges that following release of the letter, he had an increasingly difficult time managing his office.  Plaintiff further alleges that when he attempted to respond to allegations against him, made either in the recall campaign or employee stress claims, County Counsel informed him that he could not do so.

On November 23, 2010, the Commissioners released a redacted version of the Goldsmith report and a press release containing allegedly false statements about plaintiff.  Plaintiff also alleges that the release left out all findings that supported plaintiff's position.  Voters recalled plaintiff from office in December of 2010.

Plaintiff argues that his section 1983 claims

are based on defendants' state actions in retaliation of plaintiff and in interfering with his statutory rights as Assessor, which stand alone as actionable violations of plaintiff's First and Fourteenth Amendment rights. Plaintiff's claims are also based on his substantive due process rights based on his liberty interest of performing his duties as County Assessor, not a right to hold elected office.

Plaintiff's Memorandum in Opposition to Defendant's Motion for

ORDER - page 5

Summary Judgment (#13) at p. 7.


A.   First Amendment Retaliation

Plaintiff contends that defendants retaliated against him for releasing e-mails to raise public awareness. Specifically, plaintiff asserts that defendants retaliated by:

(a) changing the purported purpose of the Goldsmith Report from an investigation into one firing into a broader investigation into how he conducted his office, (b) failing to tell plaintiff that the scope of the Goldsmith report was being expanded to cover a broader investigation into how he conducted his office, © releasing a defamatory letter and summary of the Goldsmith report to the public, (d) failing to provide Ms. Goldsmith with information that impeached the credibility of witness interviewed by Ms. Goldsmith.

Id. at p. 8.

A governmental entity may not abuse its position as an employer to stifle the First Amendment rights its employees would otherwise enjoy as citizens to comment on matters of public interest. Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009). To demonstrate a First Amendment violation, a public employee must show:

(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

Id.

ORDER - page 6

Plaintiff asserts that his First Amendment retaliation claim must be analyzed as if he were a public employee because, he contends, his relationship with the board is analogous to that of an employer/employee.  Plaintiff cites a case in which the relationship between an independent contractor and a municipal court that utilized the independent contractor's services was sufficiently analogous to that of an employer/employee to employ the public employee balancing test for First Amendment claims. Clairmont v. Sound Mental Health, 632 f.3d 1091, 1101-02 (9th Cir. 2011) (independent contractor's employee was required to provide staff coverage in the court 40 hours per week, all staff had to submit a monthly report and work was subject to the City's general review and approval).  However, plaintiff's position as an elected official is not analogous to an employee/employer relationship.  In Oregon, an elected official is not an employee.  E.g., Young v. State, 177 Or.app. 295, 299-303 (elected officials are not state employees for the purpose of ORS 279.340(1)).

For purposes of a 42 U.S.C. § 1983 claim, whether a person is an employee of a public body is a question of state law.  See Collins v. City of Harker Heights, TX, 503 U.S. 115, 128 (1922) ("state law, rather than the Federal Constitution, generally governs the substance of the employment relationship.")  Whether an individual is an employee is a legal conclusion that depends upon a factual determination of the extent to which the purported

employer has the right to control the performance of services by the individual. Schaff v. Ray's Land & Sea Food Co., Inc. 335 Or. 94, 103 (2002).

Four factors are relevant in determining whether a purported employer has the right to control an individual: 1) direct evidence of the right to control an individual; 2) the method of payment; 3) furnishing of equipment; and the right to discharge. Cantua v. Creager, 169 Or.App. 81, 92 (2000) Between control and the payment of wages, control is the decisive factor for determining employment. Matter of Compensation of Hunter, 54 Or.App. 718, 722, 635 P.2d 1371 (1981).

Assessors are elected to office and not hired by the county. ORS § 204.005. Qualifications for office are set by statute. See ORS § 204.016(1) and (4). Although appointed by a county board of commissioners, a county compensation board sets the compensation due a county assessor. ORS §§ 204.112; 204.116. Changes to compensation must be approved by a county budget committee. ORS § 204.126. In addition, all employees of the assessor's office serve at the pleasure of the assessor and are considered employees of the assessor. ORS § 204.601 (1) ("employees of county officer"); ORS § 204.601(2) ("employees shall be appointed by such county officer and shall hold office during the pleasure of the appointing officer.")

Although plaintiff asserts that the Commissioners attempted to

ORDER - page 8

exercise control over him, plaintiff provides no statutory authority indicating that the Commissioners had any right to control the manner and means of his work. See Bishop v. Oregon, 2003 WL 24002421 at *5 (D.Or. Nov. 3, 2003) (the right to control test is not based on the actual exercise of control, but on the power to control); See also Great American Ins. v. General Ins., 257 Or. 62, 66-67, (1970) (the test is based not on the actual exercise of control by the employer, but on the right to control). A reading of the statutes at issue precludes a reasonable fact finder from concluding that plaintiff was an employee subject to the control of the Board of Commissioners. At best, plaintiff alleges a power struggle between two sets of elected officials little different than the interplay between, for example, the legislature and executive branches of government.

Plaintiff also argues that he was an employee when some of his claims arose. However, the retaliatory actions plaintiff complains of are alleged to have occurred when he was an elected official. To the extent plaintiff alleges that he suffered adverse consequences for asking the Board to conduct an investigation when he was an employee, such as being placed on administrative leave in September of 2008, such action is outside the statute of limitations given that plaintiff did not file his complaint until August of 2011. See ORS § 12.110(1) (two year statute of limitations); Davis v. Harvey, 789 F.2d 1332 (9th Cir. 1986) (ORS

ORDER - page 9

§ 12.110 applies to a section 1983 action); <u>Sanok v. Grimes</u>, 306 Or. 259, 262-63 (1988) (same).

Because plaintiff is not an employee for purposes of his First Amendment claim, the sequential five-step series of questions for determining a public employee retaliation claim does not apply and the Commissioners could not take an adverse employment action against plaintiff. Moreover, even if the public employee five-step test applied, plaintiff's claim would fail because plaintiff spoke in his capacity as a "public employee" and not as a private citizen. Plaintiff acknowledges that the purpose of his allegedly protected speech was to implement his ideas for reform of the assessor's office and to address misuse of county computers by assessor's office employees. Plaintiff states that he released the e-mails to "raise public awareness to the considerable deficiencies **in the operation of the Assessor's office** and the need for reform." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (#13) at p. 8 (emphasis added).

Statements are made in the capacity of a citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform. <u>Posey v. Lake Pend Oreille School Dist. No. 84</u>, 546 F.3d 1121, 1127 n. 2 (9th Cir. 2008). While the scope and content of a plaintiff's job responsibilities is a question of fact, the ultimate constitutional significance of the

ORDER - page 10

facts as found is a question of law. Id. at 1129-30. Plaintiff's own declaration establishes that his speech was the product of performing the tasks of his job as assessor. See, e.g., Declaration of Adam Colby (#14) at ¶ 4 (improve performance of assessor's office employees); ¶ 7 (to improve work ethic and function of the office, asked assistant to monitor e-mails and the monitoring was allowed pursuant to office and county policy); ¶ 7 (purpose was to make sure employees were not spending significant time with personal computer use). There can be no legitimate dispute that the alleged protected speech was the product of plaintiff performing the tasks of his job as assessor.

Although the public employee analysis does not apply, an elected official could still make a claim for First Amendment retaliation under appropriate circumstances. In order to run afoul of the First Amendment by suppression of speech, the governmental measure must punish, or threaten to punish, protected speech by governmental action that is "regulatory, proscriptive, or compulsory in nature." Laird v. Tatum, 408 U.S. 1, 11 (1972). The consequence may be an "indirect discouragement," rather than a direct punishment, such as "imprisonment, fines, injunctions or taxes." American Communications Ass'n. v. Douds, 339 U.S. 382, 402.

A discouragement that is "minimal" and "wholly subjective" does not however, impermissibly deter the exercise of free speech rights. United States v. Ramsey, 431 U.S. 606, 623-24 (1977); see also Pacific Gas & Elec. Co. v. Public Utils. Comm'n, 475 U.S. 1,

ORDER - page 11

30 (1986) (Rehnquist, J. dissenting) ("When the potential deterrent effect of a particular state law is remote and speculative, the law simply is not subject to heightened scrutiny."). Although the governmental action may "fall short of a direct prohibition," it must impose a specific collateral injury. Laird, 408 U.S. at 11. The government in the cases discussed by the Court wielded compulsory power that clearly abridged free speech rights. Id. Examples of governmentally imposed injuries include: denial of state bar admission, e.g., Baird v. State Bar, 401 U.S. 1 (1971); loss of employment, e.g., Keyishian v. Board of Regents, 385 U.S. 589, 592, 87 (1967); and the conditioning of employment on a vague oath, e.g., Baggett v. Bullitt, 377 U.S. 360 (1964).

Here, plaintiff alleges that the Commissioners placed restrictions on his speech regarding communications with employees and restricted his speech regarding the Goldsmith report. Although plaintiff alleges that county counsel told him he was not allowed to speak and the letter also purported to place restrictions on plaintiff's speech, plaintiff fails to demonstrate that defendants wielded some power over plaintiff to prohibit the speech. The June 29, 2010 letter merely indicated that the County reserved the right to refuse to indemnify plaintiff for any action where his conduct was outside the course and scope of his official duties. The letter also indicated that failure to comply with the purported speech restrictions would be viewed in "the most extreme light and will result in further steps to protect our employees from your
ORDER - page 12

actions. " The County has a right to voice its concerns regarding employment matters taken by an elected official that may subject it to legal liability. The County may interject its own voice into public discourse. See Meese v. Keene, 481 U.S. 465, 480-82, (1987). Although the county may have disagreed with plaintiff's speech and may have indeed wanted it to stop, it could not prevent plaintiff from speaking about matters concerning his duties. Indeed, the letter states that the County did not intend to dictate how plaintiff performed his duties.

In sum, the county disagreed with plaintiff's speech and went so far as to discourage it. But the county did not, and could not, impose any direct or collateral injury. Plaintiff may have felt he could not speak about matters in the report during the recall campaign, but he fails to demonstrate how the county could dictate how he ran his campaign to avoid recall. In addition, his speech was restricted with respect to his employees, but the only actual restriction regarding hiring, firing, and discipline was that imposed by contract and statute. See ORS § 204.121 (county civil service law applies to office of assessor). Although assessor office employees serve at the pleasure of the assessor, that authority is limited by collective bargaining agreements. See Graves v. Arnado, 307 Or. 358, 363 (1989). The County had a collective bargaining agreement in place governing assessor's office employees. Plaintiff does not allege that the restrictions in the statute requiring conformance with the CBA violated his free

ORDER - page 13

speech rights. The county also has a free speech right to assert its own voice on this public matter. To the extent the defendants discouraged plaintiff from speaking, that discouragement was wholly subjective and not an actionable First Amendment violation. The motion for summary judgment is granted as to the First Amendment retaliation claim.

## B. Deprivation of Liberty Interest Without Due process

Plaintiff alleges that defendant infringed his Fourteenth Amendment rights by depriving him of his freedom to engage in any common occupations of life without due process of law.

The liberty interest protected by the due process clause "encompasses an individual's freedom to work and earn a living." Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093, 1100 (9th Cir. 1981). "[W]hen the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name." Id. "To implicate constitutional liberty interests, however, the reasons for dismissal must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities." Id. at 1101. Moreover, to infringe upon a constitutionally protected liberty interest, the charges must be published. Bishop v. Wood, 426 U.S. 341 (1976). Although plaintiff was not dismissed by defendants, he argues that he was denied a similar interest in his

ORDER - page 14

right to run the assessor's office under ORS § 204.601(2) and, in addition, he contends that he suffered stigmatizing statements.

As noted above, although employees of the assessor's office serve at the pleasure of the assessor, that control is circumscribed by the CBA in place.  Defendants had no power to deprive plaintiff of his right to run the office and any attempt to do so that went beyond the CBA would have no effect despite plaintiff's fears, especially since the Board did not have authority to remove him.  Moreover, "[c]harges that carry the stigma of moral turpitude" such as dishonesty or immorality "may implicate a liberty interest, but charges of incompetence or inability to get along with others do not."   Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir. 1991).  The alleged defamatory statements in this case do not involve charges of dishonesty or moral turpitude, but rather implicate poor management qualities of plaintiff in running the assessor's office. Defendants asserted that plaintiff's management style has resulted in significant legal liability, a large number of tort and worker's compensation claims, and significant turnover.  The mere fact that the charges may be unfair or untrue does not give rise to a constitutional claim: "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." Bishop v. Wood, 426 U.S. at 350.

Allegations that exclude a person permanently from a

ORDER - page 15

profession may also infringe a constitutionally protected liberty
interest, even if they do not rise to the level of moral turpitude.
Roley v. Pierce County Fire Protection District No. 4, 869 F.2d
491, 496 (9th Cir. 1989). Plaintiff does not suggest he has been
excluded from the appraisal profession. Accordingly, defendant's
motion for summary judgment is granted as to this claim as well.

Plaintiff, in essence, attempts to elevate a political stand-
off between an elected official and other elected officials
regarding the management of the elected official's office, to a
constitutional magnitude. Courts should not entertain such
political squabbles. It is all but a given that in politics, truth
often does not play the leading role and political activity
invariably involves attempts to cast those aspiring for or in
office in a negative light which may or may not be fair. If every
instance of such activity implicated the Constitution, courts would
effectively usurp the role of the voters in vetting those seeking
office. Article III of the Constitution and the First and
Fourteenth Amendments were not drafted with such a role in mind.
Accordingly, in addition to the reasons stated above as to why
summary judgment is appropriate, defendant Main is also entitled to
absolute legislative immunity for his political activity in this
matter. See Bogan v. Scott-Harris 523 U.S. 44, 53-54 (1998) (Local
legislators are entitled to absolute immunity from section 1983
liability for actions taken in the sphere of legitimate legislative

ORDER - page 16

activity regardless of motive or intent even if that intent is allegedly to intimidate and silence plaintiff and deter and prevent him from effectively exercising his constitutional rights).

In addition, because, at a minimum, plaintiff fails to demonstrate that his alleged right to control his employees and speak unfettered by the Board of Commissioners is clearly established, defendant Main is also entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (#8) is granted and this action is dismissed.

DATED this _30th_ day of January, 2012.

United States District Judge

ORDER - page 17